Gregory J. Vogler (admitted *pro hac vice*)
Email: gvogler@mcandrews-ip.com
Robert A. Surrette (admitted *pro hac vice*)
Email: bsurrette@mcandrews-ip.com
Merle S. Elliott (admitted *pro hac vice*)
Email: melliott@mcandrews-ip.com
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

William Ross Overend (SBN 180209)
Email: woverend@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California 94105
Telephone: (415) 543-8700
Facsimile: (415) 391-8269

Attorneys for Defendants
STRYKER CORPORATION and
STRYKER COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KARL STORZ ENDOSCOPY-AMERICA, INC., | ) ) Case No. C 09-0355 (WHA) |
| Plaintiff, | ) ) **STRYKER CORPORATION AND STRYKER** |
| v. | ) **COMMUNICATIONS, INC.'S NOTICE OF** ) **MOTION AND MOTION FOR SUMMARY** ) **JUDGMENT OF NON-INFRINGEMENT** |
| STRYKER CORPORATION and STRYKER COMMUNICATIONS, INC., | ) **AND INVALIDITY: MEMORANDUM OF** ) **POINTS AND AUTHORITIES IN SUPPORT** |
| Defendants. | ) ) Date: November 10, 2011 ) Time: 8:00 a.m. ) Place: Courtroom 8 ) ) Honorable William H. Alsup ) |

Page

TABLE OF AUTHORITIES …………………………………………...………....… iii

I.     STATEMENT OF ISSUES TO BE DECIDED ....................................................1

II.    SUMMARY OF THE ARGUMENT ....................................................................1

       A.    The '688 Patent..........................................................................................2

       B.    The '286 Patent..........................................................................................4

             1.    Stryker Does Not Infringe The '286 Patent...................................5

             2.    The '286 Patent Is Invalid ..............................................................5

III.   THE ACCUSED PRODUCTS ..............................................................................6

IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT........................................9

V.     ARGUMENT .......................................................................................................10

       A.    The Accused Stryker Products Do Not Infringe The '688 Patent .............10

             1.    There Is No Literal Infringement ..................................................10

             2.    Application Of The Doctrine Of Equivalents Would Vitiate The
                   Limitation Of "A Surgeon's Control Panel Operatively Positioned At
                   The Surgeon's Operating Station"..................................................12

       B.    The Accused Stryker Products Do Not Infringe The '286 Patent .............13

             1.    There Is No Literal Infringement ..................................................14

             2.    Application Of The Doctrine Of Equivalents Would Vitiate The "Self-
                   Configuring" Limitation ...............................................................16

       C.    The Asserted Claims Of The '286 Patent Are Invalid As A Matter Of Law
             Because They Are Indefinite .....................................................................17

             1.    Claims Must Be Definite To Notify The Public Of Their Scope ....17

             2.    The Asserted Claims Of The '286 Patent Are Indefinite Because The
                   Scope Of "Configuring" Is Impossible To Determine.....................17

       D.    The Asserted Claims Of The '286 Patent Are Invalid As A Matter of Law
             Because They Lack Written Description .....................................................19

1.   The Written Description Requirement Ensures The Patentee Possessed The *Full Scope* Of The Claimed Invention ......................................................19

2.   The '286 Patent Does Not Contain A Written Description Commensurate With The Scope Of The Asserted Claims ...............................20

VI.   CONCLUSION ......................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acco Brands, Inc. v. ABA Locks Mfr. Co.*,
  501 F.3d 1307 (Fed. Cir. 2007) ....................................................................12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................................9

*Astrazeneca AB v. Mut. Pharm. Co.*,
  384 F.3d 1333 (Fed. Cir. 2004) ....................................................................12

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
  501 F.3d 1274 (Fed. Cir. 2007) ....................................................................10

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*,
  555 F.3d 984 (Fed. Cir. 2009) ......................................................................12

*Baxter Int'l, Inc. v. Cobe Labs., Inc.*,
  88 F.3d 1054 (Fed. Cir. 1996) ......................................................................10

*Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*,
  15 F.3d 1573 (Fed. Cir. 1993) ........................................................................9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)............................................................................................9

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
  291 F.3d 1317 (Fed. Cir. 2002) ..............................................................13, 16

*Edwards Lifesciences LLC v. Cook Inc.*,
  582 F.3d 1322 (Fed. Cir. 2009) ....................................................................11

*Gentry Gallery, Inc. v. Berkline Corp.*,
  134 F.3d 1473 (Fed. Cir. 1998) ....................................................................19

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008) ..........................................................10, 17, 18

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
  341 F.3d 1332 (Fed. Cir. 2003) ....................................................................17

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009) ....................................................................10

*In re Swineheart*,
  439 F.2d 210 (C.C.P.A. 1971) ......................................................................18

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005) ....................................................................17

*Johnston v. IVAC Corp.*,
  885 F.2d 1574 (Fed. Cir. 1989) ......................................................................9

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005) ..............................................................19, 21

*Lockwood v. Am. Airlines, Inc.*,
   107 F.3d 1565 (Fed. Cir. 1997) ..................................................................19, 21

*Moore U.S.A., Inc. v. Standard Register Co.*,
   229 F.3d 1091, 1106 (Fed. Cir. 2000) .................................................................13

*Morton Int'l, Inc. v. Cardinal Chem. Co.*,
   5 F.3d 1464 (Fed. Cir. 1993) ............................................................................9, 17

*Oakley, Inc. v. Sunglass Hut Int'l*,
   316 F.3d 1331 (Fed. Cir. 2003) ...........................................................................17

*PC Connector Solutions LLC v. SmartDisk Corp.*,
   406 F.3d 1359 (Fed. Cir. 2005) .............................................................................9

*PIN/NIP, Inc. v. Platte Chem. Co.*,
   304 F.3d 1235 (Fed. Cir. 2002) ...........................................................................19

*S3 Inc. v. nVIDIA Corp.*,
   259 F.3d 1364 (Fed. Cir. 2001) ...........................................................................17

*Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001) ...........................................................................13

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) .............................................................................9

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) .............................................................13, 16, 19

*Turbocare Div. of Demag Deloval Turbomachinery Corp. v. Gen. Elec. Co.*,
   264 F.3d 1111 (Fed. Cir. 2001) ...........................................................................19

*Univ. of Rochester v. G.D. Searle & Co.*,
   358 F.3d 916 (Fed. Cir. 2004) .............................................................................19

*Wahpeton Canvas Co. v. Frontier, Inc.*,
   870 F.2d 1546 (Fed. Cir. 1989) ...........................................................................10

*Warner-Lambert Co. v. Teva Pharms USA, Inc.*,
   418 F.3d 1326 (Fed. Cir. 2005) .............................................................................9

*Williams v. Gen. Surgical Innovations, Inc.*,
   178 F. Sup.2d 698 (E.D. Tex. 2002) ....................................................................19

*Zelinski v. Brunswick Corp.*,
   185 F.3d 1311, (Fed. Cir. 1999) ....................................................................12, 16

**Statutes**

35 U.S.C. § 112 ....................................................................................................passim

**Rules**

Fed. R. Civ. P. 56 ...............................................................................................1, 5, 9

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 10, 2011, at 8:00 a.m., in the courtroom of the Honorable William H. Alsup, Stryker Corporation and Stryker Communications, Inc. (collectively "Stryker"), will move pursuant to Federal Rule of Civil Procedure 56 for summary judgment of non-infringement and invalidity of the two patents-in-suit: (1) U.S. Patent No. 5,788,688 ("the '688 patent"); and (2) U.S. Patent No. 6,397,286 ("the '286 patent"). This motion can be decided as a matter of law based upon the Court's legal interpretation of the claims and the relevant indisputable structure of the accused Stryker products.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      STATEMENT OF ISSUES TO BE DECIDED**

This motion for summary judgment presents the following case-dispositive issues to be decided:

1.      Whether, as a matter of law, Stryker does not infringe asserted claims 1-20 of the '688 patent, either literally or under the doctrine of equivalents?

2.      Whether, as a matter of law, Stryker does not infringe asserted claims 1, 3-4, 7-11, 13, 19-20, 22, 24-28, 30-33, and 35-40 of the '286 patent, either literally or under the doctrine of equivalents?

3.      Whether, as a matter of law, the asserted claims 1, 3-4, 7-11, 13, 19-20, 22, 24-28, 30-33, and 35-40 of the '286 patent are invalid under 35 U.S.C. § 112?

If granted, this motion will dispose of all of Karl Storz Endoscopy-America, Inc.'s ("KSEA") claims against Stryker.

**II.     SUMMARY OF THE ARGUMENT**

This case involves KSEA's attempts to expand its patent rights beyond their permissible scope. The two patents-in-suit – the '688 and '286 patents – relate generally to the control of surgical devices in operating rooms. Both patents emerged from an extremely crowded field of prior art and thus, to the extent they are even valid, are entitled only to a very limited scope. For example, the '688 patent covers only a specific type of "surgeon's control panel" used in a specific location and manner

by a surgeon.  Likewise, the '286 patent, which relates to a system for centrally controlling surgical instruments, requires a "self-configuring bus" and a "bus master" that monitors the system in a specified manner.  Because Stryker's accused products function differently, KSEA has been forced to argue infringement in a manner that neither the facts nor the law supports.

KSEA has the burden of proving infringement **with sufficient evidence** to establish that the accused products practice each and every element of the asserted claims of the patents-in-suit. Despite repeated requests from Stryker, KSEA has failed to do so for the claim elements at issue in this motion.  Indeed, KSEA has **no** evidence whatsoever with regard to infringement of those claim elements.  Moreover, as a matter of law, the '286 patent is invalid for failure to meet the written description requirement and for indefiniteness.  Summary judgment of non-infringement and invalidity is thus appropriate.

## A.    The '688 Patent

Stryker does not infringe asserted claims 1-20 of the '688 patent.  The '688 patent is directed to a surgeon's command and control system ("SCC") that is used to control remotely the various pieces of self-contained surgical equipment located in the operating room.  Figure 1 from the patent depicts a surgeon performing a surgical procedure using a surgical command and control system according to the invention.  (Ex. A[1], '688 patent at col. 5:47-79).

---

[1] References to Exhibits (i.e., "Ex. __") are the exhibits attached to the Declaration of Merle S. Elliott in Support of Stryker Corporation's And Stryker Communications, Inc.'s Motion For Summary Judgment Of Non-Infringement And Invalidity.



In Figure 1, the surgeon uses several instruments, each of which is connected to a control head. All the control heads are connected to a central equipment control unit (66), which in turn is connected to a surgeon's command and control system (40), with a surgeon's control panel (70) "operatively positioned at the surgeon's operating station." (*Id.* at claim1.)

Figure 4 of the '688 patent depicts the surgeon's control panel in greater detail:



*Fig. 4*

(*Id.* at col. 5:56-67.) The surgeon uses the surgeon's control panel to both view data and enter commands manually. (*Id.* at claims 1, 10.)

1    Each asserted claim of the '688 patent requires "a surgeon's control panel operatively
2    positioned at the surgeon's operating station" and "a surgeon's operating station at which a surgical
3    procedure is performed."  (*Id.* at claims 1, 10.)  The Court construed "a surgeon's control panel
4    operatively positioned at the surgeon's operating station" to mean:  "a panel that a surgeon can use
5    directly both to view data and to enter commands manually without leaving the surgeon's operating
6    station." (D.I. 293, Claim Construction Order at 17.)  The Court further construed "a surgeon's
7    operating station at which a surgical procedure is performed" to mean "the location a surgeon
8    occupies while using surgical instruments to perform a surgical procedure on a patient." (*Id.* at 14.)
9    Accordingly, the asserted claims require "a panel that a surgeon can use directly both to view data
10   and to enter commands manually without leaving the location a surgeon occupies while using
11   surgical instruments to perform a surgical procedure on a patient."

12       KSEA has provided no evidence that establishes the Stryker products meet at least two of the
13   requirements of the asserted claims.  First, KSEA has provided no evidence that ***any*** surgeon has
14   used a Stryker product "directly both to view data and to enter commands manually."  Second, KSEA
15   has provided no evidence that any such Stryker product is located at "the surgeon's operating station"
16   as interpreted by the Court.

17       **B.    The '286 Patent**

18       The '286 patent is directed to a system for centrally controlling a plurality of instruments in an
19   operating room using a "self-configuring bus" and a "bus master."  Stryker does not infringe asserted
20   claims 1, 3-4, 7-11, 13, 19-20, 22, 24-28, 30-33, and 35-40 of the '286 patent.  In addition, all of the
21   asserted claims of the '286 patent are invalid under 35 U.S.C. Section 112.  Each asserted claim of the
22   '286 patent requires (1) "a self-configuring bus" and (2) a bus master that monitors "communication
23   on the bus for correct execution."  (*See* Ex. B, '286 patent at claim 1.)  The Court construed the term
24   "a self-configuring bus" to mean "a communication medium for connecting multiple devices that
25   automatically configures itself."  (D.I. 293, Claim Construction Order at 28.)

26

27

28

1    **1.    Stryker Does Not Infringe The '286 Patent**

2         Despite Stryker's request for such disclosures, KSEA has provided no evidence to date that

3    establishes that the accused Stryker products include either (1) "a self-configuring bus" or (2) a bus

4    master that monitors "communication on the bus for correct execution."  First, the Stryker products

5    do not contain a self-configuring bus because the accused Stryker products are configured during the

6    manufacturing process and, therefore, are not self-configuring.  Second, Stryker's accused products

7    do not contain a bus master that monitors "communication on the bus for correct execution."  Instead,

8    Stryker's accused products do not confirm that commands on the bus were correctly executed.

9    Stryker's accused products "fire and forget" – they send commands to the controlled devices ("fire")

10   and then do nothing further ("forget").

11        **2.    The '286 Patent Is Invalid**

12        The asserted claims of the '286 patent are invalid under 35 U.S.C. Section 112 because they

13   fail to satisfy at least (1) the written description requirement and (2) the definiteness requirement of

14   that statutory provision as a matter of law.  Stryker is also therefore entitled to summary judgment of

15   invalidity under Federal Rule of Civil Procedure 56.

16
17
18
19
20
21
22
23
24



25        As shown in the demonstrative figure above, the large white rectangle represents the scope of

26   the claims in the '286 patent as urged by KSEA and interpreted by the Court.  The smaller, gray

27   rectangle represents the scope of the disclosure in the '286 patent, which is narrower than the scope of

28

the claims. The '286 patent discloses only a self-configuring bus that automatically selects a bus master. The asserted claims of the '286 patent, however, as interpreted by the Court, are not limited to a self-configuring bus that automatically selects a bus master. The '286 patent does not describe the remaining scope of the claims. Therefore, based on the Court's recent claim construction, the asserted claims of the '286 patent are invalid under 35 U.S.C. Section 112, ¶ 1 because they lack written description.

The asserted claims of the '286 patent are also invalid because they are indefinite as a matter of law. Under 35 U.S.C. Section 112, ¶ 2, a patent claim must be sufficiently definite to inform the public of the metes and bounds of a claimed invention so that a potential competitor can know with reasonable certainty whether or not he is infringing. A self-configuring bus that "automatically configures itself" does not provide the public with any guidance as to whether a specific bus meets the "self-configuring" limitation or not. As recognized by the Court during claim construction, there is a "dearth" of information in the '286 patent regarding the specific nature of the "configuring" required by the "self-configuring bus" in the asserted claims. Without any clear understanding of what is covered by the term "a self-configuring bus" in the asserted claims, it is impossible to know whether a particular device meets that claim limitation or not. Therefore, the asserted claims of the '286 patent do not meet the definiteness requirement of 35 U.S.C. Section 112, ¶ 2 as a matter of law.

### III. THE ACCUSED PRODUCTS

Among other medical devices, Stryker makes and sells electronic medical devices under the name SIDNE that are generally used to provide centralized control of various other electronic medical devices in the operating room. (Declaration of Amit Mahadik ("Mahadik Decl., at ¶¶ 4-6").) Stryker sells two closely related variations of SIDNE devices called "SIDNE Suite" and "SIDNE Link," and an earlier model of SIDNE is now referred to as "SIDNE HD." (*Id*. at ¶ 5.) SIDNE HD, SIDNE Suite, and SIDNE Link are collectively referred to as "SIDNE." (*Id*.) A picture of a SIDNE system is reproduced below:



Devices centrally controlled by SIDNE include, for example, endoscopic cameras and light sources, insufflators, arthroscopy pumps, and surgical tables. (*Id.*, at ¶ 7.) SIDNE devices allow a user to use either voice commands or a touch screen tablet to control devices connected to SIDNE's serial ports. (*Id.*, at ¶ 8.) Certain models of another product, generally referred to as "SwitchPoint," can connect to the SIDNE HD and SIDNE Suite and allow a user to control SIDNE (and devices connected to it) through a SwitchPoint touch panel display. (*See id.*, at ¶ 9; Declaration of Richard A. Beutter ("Beutter Decl., at ¶ 5").) A picture of a SwitchPoint Infinity 2 system is reproduced below:



Each of the eight ports on SIDNE's rear panel uses the same specific version of the RS-232 protocol, which is referred to herein as the "SIDNE RS-232 protocol."[2]  (Mahadik Decl., at ¶ 10.) During operation, the SIDNE device regularly and frequently polls each of its eight ports to request the "device identification" of a connected device.  (*Id*., at ¶ 12.)  When a device is connected to SIDNE, it responds to SIDNE's request and provides its specific "device identification."  (*Id*.)  If SIDNE recognizes the "device identification" as belonging to a device which SIDNE can control, SIDNE then allows communication to take place between SIDNE and the connected device.  (*Id*.) The commands that SIDNE can send to each connected device are pre-determined and must be included in the pre-written software in order for a user to select or give a specific command.  (*Id*.)

SIDNE sends commands to connected devices, and it is able to confirm that a complete command was ***received*** by a connected device.  (Mahadik Decl., at ¶ 13.)  SIDNE cannot, however, confirm if a connected device ***executed*** a command.  (*Id*.)  SIDNE does continue to poll each port to see if the connected devices send any change in status updates, and does report each change in status update from a connected device to the user.  (*Id*.)  Once SIDNE sends a command to a connected

---

[2] The SIDNE RS-232 protocol is a set of rules developed by Stryker that allows the SIDNE to communicate with other devices.  (Mahadik Decl., at ¶ 11.)

device, however, SIDNE does not contain any logic that checks to see if such a command was executed correctly. (*Id.*)  If, for example, a particular command is not executed, and the connected device sends no change in status updates, SIDNE does not require an update from the connected device on the execution of a command. (*Id.*)

## IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be rendered where "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986).  A fact will only be considered genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001).

KSEA bears "the burden of proving infringement by a preponderance of the evidence." *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468 (Fed. Cir. 1993).  Patent infringement analysis involves two steps:  "First, the claim must be properly construed to determine its scope and meaning.  Second, the claim as properly construed must be compared to the accused device or process." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005) (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)). "Infringement may be found **only**[3] where the accused product or process contains **each limitation of the claim**, either literally or under the doctrine of equivalents." *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1340 (Fed. Cir. 2005).  Thus, Stryker "is entitled to summary judgment, on the ground of non-infringement, by pointing out that [KSEA] failed to put forth evidence to support a finding that a limitation of the asserted claim[s] was met by the structure in the accused devices." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed. Cir. 1989).  "It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been

---

[3] Throughout this memorandum, emphasis has been added unless otherwise noted.

| 1 | found to have been infringed." *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. |
| 2 | Cir. 1989). |
| 3 |     Stryker bears the burden of proving invalidity by clear and convincing evidence. *Baxter Int'l,* |
| 4 | *Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1057 (Fed. Cir. 1996). Summary judgment of patent |
| 5 | invalidity is frequently granted and affirmed by the Federal Circuit. *See, e.g.*, *ICU Med., Inc. v.* |
| 6 | *Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1379 (Fed. Cir. 2009) (affirming summary judgment of lack of |
| 7 | written description); *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255-56 (Fed. Cir. |
| 8 | 2008) (affirming summary judgment of indefiniteness); *Auto. Techs. Int'l, Inc. v. BMW of N. Am.,* |
| 9 | *Inc.*, 501 F.3d 1274, 1285 (Fed. Cir. 2007) (affirming summary judgment of lack of enablement). |

## V.    ARGUMENT

### A.    The Accused Stryker Products Do Not Infringe The '688 Patent

Stryker does not infringe asserted claims 1-20 of the '688 patent either literally or under the doctrine of equivalents.

#### 1.    There Is No Literal Infringement

Each asserted claim requires "a surgeon's control panel operatively positioned at the surgeon's operating station" and "a surgeon's operating station at which a surgical procedure is performed." (Ex. A, '688 patent at claims 1-20.) The Court construed "a surgeon's control panel operatively positioned at the surgeon's operating station" to mean: "a panel that a surgeon can use directly both to view data and to enter commands manually without leaving the surgeon's operating station." (D.I. 293, Claim Construction Order at 17.) The Court further construed "a surgeon's operating station at which a surgical procedure is performed" to mean "the location a surgeon occupies while using surgical instruments to perform a surgical procedure on a patient." (*Id.* at 14.) Accordingly, the asserted claims require "a panel that a surgeon can use directly both to view data and to enter commands manually without leaving the location a surgeon occupies while using surgical instruments to perform a procedure on a patient." In other words, the panel must be (1) used by the surgeon directly to view data and enter commands, and (2) at the same location where the surgeon performs surgery.

First, KSEA has provided no evidence that ***any*** surgeon has used a Stryker product "directly both to view data and to enter commands manually."  Second, KSEA has provided no evidence that any such Stryker product is located at "the surgeon's operating station" as interpreted by the Court. KSEA's Infringement Contentions cite to no evidence that establishes a surgeon has used a SIDNE tablet or SwitchPoint touch panel "directly both to view data and to enter commands manually without leaving the location" that surgeon occupied "while using surgical instruments to perform a procedure on a patient."    Stryker has requested multiple times that KSEA supplement its Infringement Contentions to correct this deficiency, but KSEA has declined to do so.  (*See* Ex. C, Sept. 24, 2009 Letter from Bateman to Aldrich; Ex. D, June 28, 2011 Letter from Elliott to Aldrich; Ex. E, July 8, 2011 Letter from Aldrich to Elliott.)

Moreover, the SIDNE and SwitchPoint devices are not, in fact, used in the manner required by the Court's claim construction.  Rather, the SIDNE tablet and SwitchPoint touch panels are located such that any entry of commands manually is relayed by the surgeon to the support staff.[4]  Panels located in such a manner are specifically distinguished by the '688 patent as ***not being*** the invention:

> Also, when a surgeon deems an adjustment of the output settings is required, the instructions must be relayed to support staff outside of the sterile field to actually adjust the equipment.  This provides indirect verbal control of output to the surgical instruments.    Lack of direct control can be unsafe because of possible miscommunications and can be inefficient since the attendant often is outside of the actual operating room and the surgeon and procedure must wait for the attendant's return before adjustment to the equipment can be made.  Slowness in making changes and pauses in the rhythm of surgery produces economic impacts as the operating room is typically charged by the minute.

(Ex. A, '688 patent at 2:37-48.)  *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1333 (Fed. Cir. 2009) ("Where the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack that same feature, this operates as a clear

---

[4] When the SwitchPoint touch panel is used to control the SIDNE, the SwitchPoint touch panel is typically installed in what is called the "documentation station" in the operating room.  (*See* Beutter Decl. at ¶ 6.)  The documentation station is typically across the room from the location where the surgeon performs the procedure.    (*Id.*)    Some Stryker customers have purchased a second SwitchPoint touch panel, which can be installed so it is viewable from the location where the surgeon performs the procedure.  (Beutter Decl. at ¶ 7.)  The SwitchPoint touch panel is not sterilized or sterilizable.  (*See id.*)  Therefore, even if a second SwitchPoint touch panel is installed, KSEA has no evidence that the surgeon uses it to "enter commands manually," as required by the claims of the '688 patent.

disavowal of these other products . . . ." (quoting *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004)).  In other words, the SIDNE and SwitchPoint devices are the very type of prior art the patentee distinguished when seeking issuance of the '688 Patent.

It is insufficient as a matter of law for KSEA to maintain its allegations of infringement on the basis that a SIDNE or SwitchPoint tablet or touch panel is theoretically capable of being placed in the claimed configuration by modification of its intended use.  *See Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.,* 555 F.3d 984, 995 (Fed. Cir. 2009) (granting summary judgment of non-infringement where patentee presented no evidence that candle holder had been configured in an infringing configuration); *see also Acco Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307, 1313 (Fed. Cir. 2007) (rejecting "reasonably capable" infringement standard).  "[I]nfringement requires 'specific instances of direct infringement or that the accused device necessarily infringes the patent in suit.'"[5]  *Ball Aerosol*, 555 F.3d at 995 (quoting *Acco Brands*, 501 F.3d at 1313).

Therefore, because the accused Stryker products do not include at least (1) "a surgeon's control panel" that is (2) "***operatively positioned at the surgeon's operating station***," Stryker does not infringe the asserted claims of the '688 patent as a matter of law.

### 2. Application Of The Doctrine Of Equivalents Would Vitiate The Limitation Of "A Surgeon's Control Panel Operatively Positioned At The Surgeon's Operating Station"

Summary judgment is proper where there is no evidence of infringement under the doctrine of equivalents.  *See Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) (infringement "under the doctrine of equivalents may be decided on summary judgment if no reasonable jury could determine that the limitation and the element at issue are equivalent").  Here, because KSEA has

---

[5] Stryker's SIDNE Tablet User Guide states "Warning The Tablet is provided non-sterile and is not intended to be sterilized.  Do not take the Tablet into the sterile field as this may expose the patient to serious infections."  (Ex. F, SIDNE Tablet User Manual at S005134.)  Stryker acknowledges that certain marketing literature indicates that a SIDNE tablet "can be bagged and mounted in the sterile field for direct surgeon control."  (Ex. G, SIDNE Brochure at S040617.)  KSEA has no evidence, however, that direct surgeon control ever occurred in practice, and the marketing literature is contrary to the User Guide.  Any such marketing literature does not prove infringement.  *See Ball Aerosol*, 555 F.3d at 995 (granting summary judgment of non-infringement where patentee presented no evidence that candle holder had been configured in an infringing configuration).

provided no evidence of infringement of the '688 patent at all, whether literally or under the doctrine of equivalents, summary judgment is proper on this basis alone.

In addition, the Federal Circuit has repeatedly declined to apply the doctrine of equivalents where doing so would have expanded the range of equivalents so as to make the claim limitation entirely unnecessary. *See, e.g., Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1321-22 (Fed. Cir. 2002); *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345-47 (Fed. Cir. 2001); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000). In other words, courts do not allow the claimed element such a broad range of meanings that it would effectively eliminate the element from the claim language, i.e., the claimed element would be vitiated. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998).

As discussed above, the asserted claims require that the control panel be located for manual operation by the surgeon at the "surgeon's operating station" (i.e., at the location the surgeon occupies "while using surgical instruments to perform a surgical procedure on a patient"). Under the doctrine of equivalents, the range of equivalents cannot be so broad that the control panel could be located **outside** the surgeon's operating station. Allowing a control panel to be located somewhere other than at the "surgeon's operating station" would improperly expand the range of equivalents and render this claim limitation meaningless. *See Scimed*, 242 F.3d at 1345-47 (where a patentee explicitly disclaimed a particular location for a lumen in a catheter, the doctrine of equivalents could not be expanded to cover that location); *Tronzo*, 156 F.3d at 1160. Here, there is no evidence that a control panel of the accused Stryker products has ever been placed at the "surgeon's operating station" for manual operation by the surgeon, nor is there any evidence that the accused products have been used by the surgeon to manually enter commands or view data. Therefore, Stryker cannot infringe the asserted claims of the '688 patent under the doctrine of equivalents.

### B. The Accused Stryker Products Do Not Infringe The '286 Patent

The accused Stryker products also do not infringe the asserted claims of the '286 patent, either literally or under the doctrine of equivalents.

### 1.    There Is No Literal Infringement

As discussed above, each asserted claim of the '286 patent requires "a self-configuring bus," defined as "a communication medium for connecting multiple devices that automatically configures itself."  (D.I. 293, Claim Construction Order at 28; Ex. B, '286 patent at claim 1 and asserted dependent claims.)  Each asserted claim of the '286 patent also requires a bus master that monitors "communication on the bus for correct execution." (*See* Ex. B, '286 patent at claim 1 and asserted dependent claims.)

KSEA's Infringement Contentions cite to no evidence that establishes the SIDNE includes a "self-configuring bus" or monitors "communication on the bus for correct execution."  Rather, KSEA's Infringement Contentions merely state in conclusory fashion that "[e]ach medical device has an interface circuit with which it is in communication with the Sidne console via a self configuring bus."  KSEA's Infringement Contentions fail to identify, *inter alia*, what structure in the accused Stryker products constitutes a "self-configuring bus" or how that structure configures itself automatically, as required by the claims.  In addition, KSEA's Infringement Contentions for claim 1 also lack any specifics whatsoever with respect to other limitations, including the requirement that the bus master monitor "communications on the bus for correct execution."  Stryker has repeatedly requested that KSEA supplement its Infringement Contentions to correct this deficiency, but KSEA has refused to do so.  (*See* Ex. C, Sept. 24, 2009 Letter from Bateman to Aldrich; Ex. D, June 28, 2011 Letter from Elliott to Aldrich; Ex. E, July 8, 2011 Letter from Aldrich to Elliott.)  Therefore, KSEA has presented no evidence that Stryker infringes the asserted claims of the '286 patent and cannot meet its burden for proving infringement.

Moreover, even putting aside KSEA's defective Infringement Contentions, the accused Stryker products do not, in fact, include either "a self-configuring bus" or a bus master that monitors "communication on the bus for correct execution."  As discussed above, all SIDNE devices allow a user to control devices connected to SIDNE's serial ports by using voice commands or a tablet having a touch screen.  (Mahadik Decl., at ¶ 8.)  Additionally, a user can use the touch panel display of a

SwitchPoint Infinity or SwitchPoint Element device to control devices connected to SIDNE's serial ports. (*See id*., at ¶ 9; Beutter Decl., at ¶ 5.)

Based on the indisputable structure of the SIDNE devices, they do not include a "self-configuring bus." Instead, the SIDNE devices are **pre-configured** and the communication architecture is fixed during the manufacturing process and identical. The SIDNE devices are not "self-configured." Each of the eight ports on SIDNE's rear panel uses the same specific version of the RS-232 protocol, which is referred to herein as the "SIDNE RS-232 protocol." (Mahadik Decl., at ¶ 10.) During operation, the SIDNE device regularly and frequently polls each of its eight ports to request the "device identification" of a connected device. (*Id*., at ¶ 12.) When a device is connected to SIDNE, it responds to SIDNE's request and provides its specific "device identification." (*Id*.) If SIDNE recognizes the "device identification" as belonging to a device which SIDNE is enabled to control, SIDNE then allows communication to take place between SIDNE and the connected device. (*Id*.) The commands that SIDNE can send to each connected device are pre-determined and must be included in the pre-written software in order for a user to select or give a specific command. (*Id*.)

As such, SIDNE does not include a "self-configuring bus." Instead of configuring itself automatically each time the device is operated, the configuration of SIDNE and its connected devices is static and identical each time a device is connected. SIDNE always controls the connected devices (not the other way around). The communication system, which does not change or configure itself during operation of SIDNE, is determined by the SIDNE programming developed by Stryker before the product was sold

In addition, SIDNE does not include a bus master that monitors "communication on the bus for correct execution." Instead, SIDNE is a "fire and forget" system. SIDNE "fires" commands to its connected devices, and then essentially "forgets" about those commands. SIDNE sends commands to connected devices, and it is able to confirm that a complete command was **received** by a connected device. (Mahadik Decl., at ¶ 13.) SIDNE cannot, however, confirm if a connected device **executed** a command. (*Id*.) Although SIDNE will continue to poll each port to see if the connected devices send any change in status updates, and will report each change in status update from a connected device to

the user, once SIDNE sends a command to a connected device, SIDNE does not check to see if such a command was executed correctly.  (*Id.*)  In fact, SIDNE does not contain any logic to perform such a task.  (*Id.*)  Because SIDNE does not include a bus master that monitors communication on the bus for correct execution, there is no direct infringement on this basis as well.

### 2. Application Of The Doctrine Of Equivalents Would Vitiate The "Self-Configuring" Limitation

KSEA has provided no evidence of infringement of the '286 patent at all, whether literally or under the doctrine of equivalents.  Therefore, Stryker is entitled to summary judgment on this issue. *See Zelinski*, 185 F.3d at 1317.  Moreover, as noted above, the Federal Circuit has repeatedly declined to apply the doctrine of equivalents where it would so expand the range of equivalents as to make the claims limitation entirely unnecessary and thereby vitiate the limitation.  *See, e.g.*, *Cooper*, 291 F.3d at 1321-22; *Moore*, 229 F.3d at 1106; *Tronzo*, 156 F.3d at 1160.

Here, as discussed above, the construction of the asserted claims requires that the bus be "self-configuring."  But the range of "equivalents" obviously cannot be so broad as to encompass a bus that is not "self-configuring" at all.  Allowing the claims of the '286 patent to cover a bus that is not self-configuring would improperly expand the range of equivalents and render meaningless the claim language "a self-configuring bus."  *See Tronzo*, 156 F.3d at 1160.  There is no evidence that Stryker's accused products have a self-configuring bus.  Allowing an equivalent to cover buses that are not self-configuring would expand the range of equivalents and render meaningless the claim language "self-configuring."

Similarly, the asserted claims require a bus master that monitors "communication on the bus for correct execution."  The range of equivalents cannot be so broad as to encompass a bus master that does no monitoring at all.  Allowing the claims of the '286 patent to cover a bus that does not monitor communication on the bus for correct execution would improperly expand the range of equivalents and render the claim language meaningless.  *See id* at 1160.

**C. The Asserted Claims Of The '286 Patent Are Invalid As A Matter Of Law Because They Are Indefinite**

**1. Claims Must Be Definite To Notify The Public Of Their Scope**

A patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. The definiteness requirement of Section 112, ¶ 2 "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (quoting *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001)). Thus, the definiteness inquiry turns on whether "the claims at issue [are] sufficiently precise to permit a potential competitor to determine whether or not he is infringing." *See Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993). In *Halliburton Energy Services, Inc. v. M-I LLC*, the Federal Circuit noted that, in considering whether a claim is indefinite, a court should look to whether the claim or the specification supplies a metric, formula, or some other means for determining whether a device meets a claim limitation. *See Halliburton*, 514 F.3d 1244, 1255-56 (Fed. Cir. 2008). Even if a claim term can be defined in words, "the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Id.* at 1251. In addition, a claim term might be sufficiently definite if it provides examples of devices that meet and fail to meet the functional limitation. *Id.* at 1255-56. (citing *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003)). Indefiniteness is a question of law. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005).

**2. The Asserted Claims Of The '286 Patent Are Indefinite Because The Scope Of "Configuring" Is Impossible To Determine**

The asserted claims of the '286 patent fail the *Halliburton* test. As discussed above, the specification of the '286 patent provides no intrinsic guidance about what "self-configuring" means. In its Claim Construction Order, the Court noted that the '286 patent provides essentially no guidance as to the term "self-configuration":

Turning to the question of self-configuration, neither the claim language nor the specification provides much elaboration. The most that can be inferred from the phrase "self-configuring bus" is that the bus configures itself [in] some way, such that external configuration which otherwise would be necessary is not required. . . . The intrinsic record of the '286 patent uses the term of art "configure" ***without providing any clue as to its definition*** . . . .

(D.I. 293, Claim Construction Order at 27.) The Court also noted the "dearth" of intrinsic evidence as to the meaning of "configure" and did not further construe that term. (*Id.* at 28.) There is no way to know what it means by saying "the bus configures itself in some way." The claim language is indefinite.

In *Halliburton*, the term at issue was a "fragile gel." The patentee attempted to define the claimed structure (a "fragile gel" for use in drilling machinery) according to its functional effect – that is, "by what it does rather than what it is." 514 F.3d at 1255 (quoting *In re Swineheart*, 439 F.2d 210, 212 (C.C.P.A. 1971)). The term was ambiguous as to, among other things, "how quickly the gel must transition to a liquid when force is applied and how quickly it must return to a gel when the force is removed." *Id.* at 1254. Focusing on this ambiguity the Federal Circuit held that the term "fragile gel" was indefinite. *Id.* at 1256.

Here, as in *Halliburton*, the specification of the '286 patent does not provide any specific teaching regarding a self-configuring bus other than that it automatically determines a bus master. As described above, Stryker's accused products do not perform this function. Furthermore, as KSEA did not dispute in the claim construction process, there is no generally accepted understanding of the precise scope of the term "self-configuring bus." Because the term "self-configuring bus" is not a term of art, and is not explained by the specification of the '286 patent, it is therefore impossible to determine whether a particular device includes a "self-configuring bus." Accordingly, the '286 patent is invalid for indefiniteness.

**D.    The Asserted Claims Of The '286 Patent Are Invalid As A Matter of Law Because They Lack Written Description**

**1.    The Written Description Requirement Ensures The Patentee Possessed The *Full Scope* Of The Claimed Invention**

A patent applicant must provide in the specification of the patent a "written description of the invention." 35 U.S.C. § 112, ¶ 1. A patent is invalid under this statutory requirement if the specification "fail[s] to demonstrate that the patentee possessed the full scope of the [claimed] invention." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005). "One shows that one is 'in possession' of *the invention* by . . . such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis in original). Thus, the written description requirement "serve[s] to ensure that the patent applicant was in full possession of the claimed subject matter on the application filing date." *Turbocare Div. of Demag Deloval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001). This requirement "prevent[s] the inventor from overreaching beyond what he has reasonably conveyed in his original disclosure[.]" *Williams v. Gen. Surgical Innovations, Inc.*, 178 F. Supp.2d 698, 707 (E.D. Tex. 2002).

A broad claim is therefore invalid if the specification indicates that the invention is, in fact, narrower. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479-80 (Fed. Cir. 1998); *LizardTech*, 454 F.3d at 1345; *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159-60 (Fed. Cir. 1998); *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247-48 (Fed. Cir. 2002). Although the "written description" inquiry is a question of fact, the Federal Circuit frequently affirms summary judgment of invalidity for lack of a written description. *See LizardTech*, 454 F.3d at 1345; *Turbocare*, 264 F.3d at 1119-20; *Lockwood*, 107 F.3d at 1571-72, 1576. The determination of whether a patent complies with the written description requirement can be made solely on the basis of the patent itself. *See Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004).

**2.    The '286 Patent Does Not Contain A Written Description Commensurate With The Scope Of The Asserted Claims**

Each of the asserted claims of the '286 patent contains the term "a self-configuring bus," defined by the Court as "a communication medium for connecting multiple devices that automatically configures itself." (D.I. 293, Claim Construction Order at 28.)

The specification of the '286 patent describes one (and only one) type of self-configuration of the bus: a configuration process in which the "bus master" is automatically selected. (*See* Ex. B, '286 patent at 3:13-21 ("With such a configuration, at least one of the following units **may be configured as** BUS master . . . ."), 3:28-32 ("Whenever more than one unit suitable for use as BUS master is connected to the bus provisions should preferably be made for arbitration or assignment of priorities so as to ensure that only one BUS master assumes the active BUS master function.").) This is in accord with dependent claim 11, which claims a particular embodiment of a self-configuration process where the bus master is selected from a specific group of devices (e.g., a master computer or network module). (*Id.* at claim 11.) Furthermore, Figures 1a through 1d of the '286 patent show various combinations of units having different bus master priorities. (*Id.* at Figs. 1a-1d.) If more than one unit capable of being a bus master is connected at the same time, those units "are assigned different priorities so that only one unit serves as bus master at a time." (*Id.* at 6:18-26.) Thus, the '286 patent discloses only a configuration process by which the bus automatically assigns the "bus master" role to a device on the bus based on that device's capabilities and priority level. This configuration process must correspond to the claimed "self-configuring" function rather than the claimed configuration process performed by the bus master, because the process applies even when a bus master has not yet been selected. Accordingly, the specification teaches only a "self-configuring bus" that automatically selects which device on the bus will serve as the bus master.

At KSEA's urging, the Court declined to limit the scope of the asserted claims of the '286 patent to a self-configuring bus that automatically selects a bus master. Stryker requested such a construction during the claim construction process. (D.I. 293, Claim Construction Order at 25.) The Court, however, stated that automatic selection of the bus master "is not required by the independent

claim." (*Id.* at 27.) The Court further elaborated that the specification treated automatic selection of the bus master as "'preferable' – not required" and that "[t]his feature may not be read into the independent claim simply because it is included in a preferred embodiment." (*Id.* at 27-28.) The Court recognized, in its Claim Construction Order, the "dearth of intrinsic evidence" in the '286 patent describing the meaning of "configure." (*Id.* at 28.) The Court specifically did not limit the asserted claims of the '286 patent to a self-configuring bus that automatically selects the bus master.

The law requires that the specification "demonstrate that the patentee possessed the ***full scope*** of the [claimed] invention." *LizardTech, Inc.*, 424 F.3d at 1345. As shown in the demonstrative figure below, the disclosure of the '286 patent does not demonstrate that KSEA possessed the full scope of the asserted claims as required by law.



**Scope of Claims in '286 Patent (as interpreted by the Court)**

Scope of Disclosure in '286 Patent (Self-Configuring Bus That Automatically Selects a Bus Master)

As shown in this figure, the scope of the actual disclosure of the '286 patent is far more narrow than the scope of the claims as interpreted by the Court. The asserted claims of the '286 patent, as interpreted by the Court, are specifically ***not*** limited to self-configuring buses that automatically select the bus master. In contrast, the scope of the description contained in the '286 patent is narrow – it is just a single column long and describes only a ***single kind*** of self-configuring bus. The '286 patent describes a self-configuring bus that automatically selects a bus master, but does not describe the remaining scope of the claims. There are no "words, structures, figures, diagrams, formulas, etc., that fully set forth" any other kinds of self-configuring buses. *See Lockwood*, 107 F.3d at 1572.

1  Therefore, KSEA has not shown that it possessed the ***full scope*** of the asserted claims of the '286

2  patent and those claims are invalid as a matter of law.

3  **VI.    CONCLUSION**

4        For the foregoing reasons Stryker respectfully requests that the Court enter summary

5  judgment that (1) Stryker does not infringe, either literally or under the doctrine of equivalents, the

6  asserted claims of the '688 patent; (2) Stryker does not infringe, either literally or under the doctrine

7  of equivalents, the asserted claims of the '286 patent; (3) the asserted claims of the '286 patent are

8  invalid because they are indefinite under 35 U.S.C. § 112; and (4) the asserted claims of the '286

9  patent are invalid for lack of written description under 35 U.S.C. Section 112.

10                                              Respectfully submitted,

11

12  Dated:  October 6, 2011                      */s/Gregory J. Vogler*
13                                              Gregory J. Vogler
                                                Robert A. Surrette
14                                              Merle S. Elliott
                                                McANDREWS, HELD & MALLOY, LTD.
15                                              500 West Madison Street, 34th Floor
                                                Chicago, Illinois 60661
16                                              (312) 775-8000

17                                              William Ross Overend (SBN 180209)
18                                              REED SMITH LLP
                                                101 Second Street, Suite 1800
19                                              San Francisco, California 94105
                                                (415) 543-8700
20

21                                              Attorneys for Defendants,
                                                STRYKER CORPORATION and
22                                              STRYKER COMMUNICATIONS, INC.

23

24

25

26

27

28